J. T. FARGASON COMPANY *v*. BANK OF LEPANTO.

Opinion delivered October 23, 1922.

1. APPEAL AND ERROR—REQUEST FOR DIRECTED VERDICT—REVIEW.— Where, at the conclusion of the evidence, both parties request an instructed verdict, and ask no other instructions, the case is withdrawn from the jury, and on appeal the court's finding of fact will be sustained if the testimony is legally sufficient.

2. SALES—TITLE.—Where a bank advanced money to a cotton buyer to buy cotton under an agreement that title be taken in the bank's name, the contract became executed when the buyer purchased the cotton with the bank's money and had it sent to a factor for the bank's account, and title passed to the bank.

3. FACTORS—EVIDENCE.—Evidence *held* to sustain a finding that cotton was delivered by a third person to a factor for the account of a bank which had advanced the money to purchase the cotton.

Appeal from Crittenden Circuit Court, *J. M. Futrell,* Judge; affirmed.

*Jas. R. McDowell,* for appellant.

The contract between Stuckey and the bank was purely executory, being only an agreement ιο deliver to

the bank all cotton purchased by Stuckey, at a stipulated price.    These conditions were not performed as to the cotton in question, and no title passed to the bank.    72 Ark. 141; 25 Ark. 545; 24 R. C. L. 313, 50 Ark. 291. Such contract, though good between the parties, is not binding as to third parties.    47 Ark. 210.    A contract for the sale of a large number of bales of cotton to be afterward acquired, does not pass title to any particular bales. 78 Ark. 511.    Where a vendor is left in possession under an executory contract to sell, the property may be seized for his debts.    54 Ark. 308.

*John W. Scobey,* for appellee.

Both sides asked for a directed verdict, which has the effect of submitting the case to the court for determination, and there being evidence to support the court's finding, the same should not be disturbed on appeal.    138 Ark. 172.    The finding that the bill of sale passed title to the bank is conclusive.    148 Ark. 576.

The title to personal property may pass and the sale be complete where it is the intention of the parties to buy and sell, even though there remains something to be done, like fixing the price, etc.    102 Ark. 344; 104 Ark. 250; 148 Ark. 576.

Smith, J.    At the conclusion of all the testimony on the trial of this cause in the court below each party asked an instructed verdict, and neither asked any other instruction.    Under our practice this is, in effect, a withdrawal of the case from the jury and the submission of it to the court, in which event it becomes our duty, on appeal, to view the case as if a jury had passed upon it and to sustain the court's finding if the testimony tending to support the finding is legally sufficient for that purpose. *Webber* v. *Rogers,* 128 Ark. 25; *Watkins* v. *Louisiana State Life Ins. Co.,* 151 Ark. 596.

The facts, therefore, may be stated as follows:    Sam Stuckey was the managing partner of the Sam Stuckey Company, which copartnership was engaged in the general furnishing business at Lepanto, Arkansas.    This firm bought cotton prior to 1920 which was shipped to

J. T. Fargason Company at Memphis, Tennessee. That company made advances on consignments of cotton which it held both as a factor and as a creditor to be sold by it for the account of Stuckey Company. At the beginning of the cotton season in the fall of 1920 Fargason Company held for the account of Stuckey Company about 150 bales, on which a balance of more than $20,000 was due. This cotton was finally sold for the account of Stuckey Company, and through the depreciation in price of cotton a large balance was left owing the Fargason Company on account of advances.

The Stuckey Company planned to buy cotton in the fall of 1920, and arranged for advances to be made by the Bank of Lepanto for that purpose. The following agreement was executed between Stuckey Company and the bank:

"BILL OF SALE.

"This memorandum witnesseth that, for the hereinafter mentioned consideration, Sam Stuckey Company, of the county of Poinsett, State of Arkansas, hereinafter called 'seller,' has this day sold to Bank of Lepanto, of the county of Poinsett, State of Arkansas, hereinafter called the 'buyer,' all cotton of every grade and description which they may buy between this date and December 1, 1920, from any persons or firms whomsoever.

"Seller agrees to deliver all such cotton within the dates aforesaid to buyer, at the warehouse in the town of Lepanto, county of Poinsett and State of Arkansas, free of all charges; and buyer, in consideration thereof, hereby pays seller the sum of one dollar, receipt whereof is hereby acknowledged by seller, and further agrees to pay seller the full purchase price of the cotton bought as aforesaid, on such dates as such cotton is bought.

"The Bank of Lepanto retains absolute title in the cotton aforesaid until it relinquishes its title in legal form. And at any time said Bank of Lepanto so directs, the seller shall, as agent of said Bank of Lepanto, ship

said cotton to Memphis, Tennessee, to be placed with cotton factors to the credit of said Bank of Lepanto.

"In witness whereof, we have hereunto set our hands this the 20th day of September, 1920.

"SAM STUCKEY COMPANY,
"BANK OF LEPANTO,
"W. R. Payne, V. President."

Stuckey bought cotton in the Lepanto market and paid for it with drafts drawn on the bank, and prior to the transaction out of which this litigation arose sold all the cotton so bought to O'Brien, the local agent of Farnsworth-Evans Company, cotton factors, doing business in Memphis, Tennessee.

The plan of operation was for Stuckey Company to repay the bank after selling the cotton. Any profit earned would have belonged to the Stuckey Company and any loss would have fallen on them.

Pursuant to this arrangement, Stuckey bought 26 bales of cotton, which he contracted to sell to O'Brien, for the Farnsworth-Evans Company. This sale was made on Friday, and the price was to be determined by the opening quotation on the Memphis market the following day. This sale, like all others made by Stuckey to Farnsworth-Evans Company, was made after consultation with Payne, the cashier of the bank, and with the approval of that officer, although O'Brien knew nothing of the bank's interest in the cotton. The market opened on Saturday one hundred points off, and Stuckey asked O'Brien to release him from the trade. This O'Brien agreed to do after consultation with the Memphis office of his firm, although the cotton had been shipped to his firm at Memphis. Upon the rescission of this sale, Stuckey directed O'Brien to notify Farnsworth-Evans Company to turn the cotton over to Fargason Company. The cotton was shipped out of Lepanto on October 16, and on Monday thereafter Stuckey wrote to Fargason Company to place the cotton to the credit of the Bank of Lepanto, and gave Payne a copy of the letter.

The cotton was actually delivered into the possession of Fargason Company on October 26, and the managing officer of that company testified that the delivery was accompanied by a note from Farnsworth-Evans Company advising the cotton should be placed to the credit of the account of Sam Stuckey Company, and the cotton was immediately so credited. ·

On behalf of Fargason Company a letter was offered in evidence to that company from Sam Stuckey Company, dated 11-11-20, directing the 26 bales of cotton to be placed to the credit of the Bank of Lepanto, and on behalf of the Fargason Company it was testified that this was the only letter received from Stuckey Company on the subject, and it was not received until after the cotton had been credited to Stuckey Company's account.   But, as has been said, Stuckey testified that he wrote a letter to that effect on the Monday following October 16th, and we must assume the court found there was such a letter, and in the ordinary course of the mails it would have been delivered to Fargason Company in Memphis before the cotton was delivered to it on October 26.

The original of a letter from the bank to Fargason Company, advising the cotton should be sold for the account of the bank, dated November 2, 1920, was also offered in evidence, and on behalf of Fargason Company it was testified that this was the first letter received from the bank; but Payne testified that he had written a previous letter, which in the usual course would have reached Fargason Company before October 26, and the second letter was written because the receipt of the first one was not acknowledged.

Fargason Company sold the cotton November 11, 1920, and credited the proceeds, less its charges as cotton factors, to the general account of Stuckey Company.

It is shown by the testimony, both of Stuckey and Payne, that the bank advanced the money which paid for the 26 bales of cotton; and it is not claimed by Fargason

Company that it made any advance on the 26 bales of cotton, or any of them.

The bank sued Fargason Company for the net proceeds of the cotton, and the court below directed a verdict in the bank's favor.

There is not involved in this litigation any question as to Fargason Company's compensation as factors, for, as has been said, the suit was brought for the net proceeds.

For the reversal of the judgment it is insisted, first, that the writing set out above is a mere executory contract, which never operated to pass title as against Fargason Company, for the reason that there was never any delivery thereunder; second, that the cotton was actually delivered to Fargason Company as a creditor of Stuckey Company, and an appropriation thereof for that purpose made by a credit on the books of the Fargason Company, and the subsequent direction of the Sam Stuckey Company to sell the cotton for the account of the bank could not operate as a rescission of the prior payment.

There was a delivery, or rather a redelivery, of this cotton to the Fargason Company; and if this delivery was for the account of the bank, then the written agreement set out above became an executed one. The controlling question, therefore, is, for whose account was the delivery to Fargason Company made? Was Fargason Company's possession that of a creditor or that of a factor?

We think the testimony set out is legally sufficient to support the finding that the cotton was delivered to Fargason Company as a factor, and not as a creditor having the right to apply the cotton to the general credit of Stuckey Company.

In section 4 of the article on Factors in 11 R. C. L., p. 755, it is said: "The distinction between a contract of sale and a consignment of goods to a factor is that in the case of a sale the title passes to the buyer, while in the case of a consignment to a factor the possession passes

to the factor but the title remains in the consignor. Where goods are delivered by one party to another, to sell for the party delivering them, it creates the relation of agency, and the title remains in the principal, and the factor or agent is liable to pay, not a price, but to account for the proceeds of the goods when sold." See also Mechem on Sales, sec. 43; Mechem on Agency (2nd. ed.), sec. 2499.

If the delivery to Fargason Company was as a factor, and not as a creditor, it was the duty of that company to apply the proceeds of the sale thereof, as directed, to the account of the bank. The undisputed evidence shows direction was given to Fargason Company before the cotton was sold to apply it to the account of the bank, and the testimony of Stuckey and of Payne is that this direction was given before the cotton was received by Fargason Company.

In other words, the testimony is legally sufficient to support these findings. The bank advanced the money to buy the cotton; the cotton was bought pursuant to the executory agreement, which became executed upon the delivery of the cotton to Fargason Company in Memphis. The delivery was to Fargason Company as a factor, and not as a creditor, and was for the account of the bank, and not that of Stuckey Company.

The judgment must therefore be affirmed.